McIlvaine, J.
It will be noticed, on reference to the .-statement of the case, that the contract between Converse and Trevitt, of August 18, 1875, was for the sale of the whole property of the Ohio Bent Work Company, then held by the assignee, to be taken however as of the date of the :assignment, to-wit: July 21, 1875. That the property did not then exist as it was at the date of the assignment, was well known to both parties. This knowledge may, perhaps, have influenced the terms of the agreement; but, whether or not, it is clear that the parties negotiated for the .property as it then existed in the hands of the assignee, .and not as it was a month previous, as per inventory. That Trevitt received the whole property of the Ohio Bent Work •Company as it then existed in the hands of the vendor, is not disputed. In this respect, therefore, the terms of the -contract have been fully realized by the purchaser. The complaint of Trevitt, however, is not that he purchased more property than was delivered; nor yet simply, that he believed, at the time of purchase, there was more property than in fact existed; but his complaint is that he was induced by fraud to so believe to his injury.
It must be observed also, that the fraud complained of is not alleged to have been committed by Converse, the vendor. It is conceded that Converse was not guilty of •either a false repsesentation or a fraudulent concealment. The fraud complained of is alleged to have been committed by one Hamilton, who was a stockholder in the corporation whose assets the vendor was administering under an assignment for the benefit of its creditors. There is no .allegation of employment, agency, conspiracy, or knowledge of fraud on the part of the vendor, made in the case.
The main question, therefore, we think, is, Can the fraud of Hamilton be imputed to Converse ?
Counsel for plaiutiff in error have expended much labor in combatting the doctrine laid down in Westfall v. Dungan, 14 Ohio St. 276, that damages for fraud committed by an executor in the sale of the testator’s property must be asserted .against the executor personally, and can not be set up by *70 way of defense, recoupment or counter-claim in an action brought by the executor, as such, to recover the purchase-money. •
No doubt, executors and assignees in insolvency should' be governed by the same rule, but, until it is determined that Hamilton’s fraud can be charged to Converse, the rule in Westfall’s case is a matter of no concern in this case.
On this question, counsel are content to say: “The fraud was perpetrated by a beneficiary, a pai'ty in interest, Of course, the fact that Converse was innocent is no answer to-our claim.” And the authorities cited do not control the-question.
The fact that Hamilton was a stockholder in the as■signor, invested him with no right to control the assets assigned; and having no right or power to control, he stood' as a stranger to the transaction. The case is similar to a decedent’s estate, and surely no one would claim that thebona fieles of a sale by an administrator could be impeached for a fraudulent representation or concealment by an heir or creditor made without the authority or knowledge of the administrator.
Converse neither solicited nor accepted the aid of Hamilton in his negotiations, and by enforcing the contract he-neither adopts nor ratifies his fraud. On the other hand, Trevitt acted upon the fraudulent suggestion of Hamilton,, and his remedy, if he has any, must be asserted against Hamilton.
We have examined all the cases cited by counsel for plaintiff in error on this point, without finding any support to their claim.
It is true, in some cases, as well as in some text-books,, we find very broad language, to the effect that “ even an innocent person can not avail himself of an advantage obtained by the fraud of another,” but we find no authority for the doctrine that an innocent party to a contract, supported by a consideration moving from himself, shall be deprived of its advantages, because of the fraud of another,, with whom he is not in privity.
*71 The rule stated by the reporter in the syllabus of the first case cited by counsel, Scholefield v. Templar, Johns. Eng. Ch. 155, afterward reported, on affirmance, in 4 De Gex &. Jones, 429, is undoubtedly based on correct principle, ancl no decided case, that we have found goes any further in support of the claim of plaintiff' in error. The rule is thus, stated: “A person, though innocent, can not avail himself of any advantage obtained by the fraud'of another, unless, there is some consideration moving from himself.” The-case was one where a creditor, who was pressing his claim, was induced by the principal debtor and his surety to accept from the principal debtor a worthless mortgage, which the principal knew to be worthless, but the surety and the-creditor did not. In consideration of the supposed security of the mortgage, the surety was released. It was held that the surety could not avail himself of the release. There-was no consideration moving from the surety.
Huguenin v. Basely, 14 Vesey, Jr., 289, was a case, where-a person, by undue influence, obtained a voluntary settlement upon himself, his wife and children. It was held that the estates of the wife and children could not be protected on the ground that they were innocent parties.
The principle decided in these cases, as in others cited,, is that an innocent person, who does not stand upon a valuable consideration moving from himself, can not assert a benefit obtained through the fraud of another.
But such is not the case before us. The consideration for the promise of Trevitt moved from Converse, the innocent promisee. This fact is the answer to the claim of plaintiff in error.

Motion overruled.